POLATSEK v UNION TRUST CO et

Ohio Appeals, 8th Dist, Cuyahoga·Co

No 14912.   Decided Oct 26, 1936

Alexander H. Martin, Cleveland, for plaintiff.

John W. Bricker, Attorney General, Columbus, L. F. Laylin, Special Counsel, Cleveland, and Oliver Stamper, of counsel, for defendants.

ROSS, J, (1st Dist), MONTGOMERY and SHERICK, JJ, (5th Dist), sitting by designation.

OPINION

By MONTGOMERY, J.

This cause comes into this court on appeal from the Court of Common Pleas, the appeal having been perfected prior to the taking effect of the new so-called Appellate Procedure Act.

After the appeal, plaintiff, by leave, filed in this court what is termed third supplemental and amended petition and the cause

was tried in this court upon that pleading, the answer thereto, and an agreed statement of facts.

The record shows that the plaintiff as guardian was the owner of certain first mortgage bonds of The Northern Ohio Traction and Light Company, which bonds were a part of a large issue of that company made as of the date of January 1st, 1903, and that to secure the payment of said bonds the obligor had executed and delivered its certain mortgage deed upon a lot of property therein described to the predecessor of The Union Trust Company as trustee. These bonds matured on January 1st, 1933. Prior to the date of the maturity of the bonds, the obligor sold its property to The Ohio Edison Company, which assumed the obligation of the mortgage according to its terms and conditions and assumed the obligation of these outstanding bonds. Shortly before January 1st, 1933, The Ohio Edison Company deposited with The Union Trust Company its check in the sum of approximately three million dollars, being sufficient to take care of the bonds maturing on January 1st, 1933. The bonds held by the plaintiff were not presented promptly to The Union Trust Company for payment and prior to the time of their presentation The Union Trust Company went upon the so-called restricted basis and still subsequently thereto was taken over by the Superintendent of Banks of the State of Ohio for liquidation. Thereafter claim was presented to the then Superintendent of Banks for the amount of these bonds as a preferred claim against the assets of The Union Trust Company then in his possession for liquidation and the claim was rejected as a preferred claim.

The record shows that the plaintiff has been paid regular dividends in the liquidation of The Union Trust Company which were paid with the understanding that these should be without prejudice to his right to pursue his claimed preference.

The record shows that the bonds provided upon their face that they should be paid "to the said Trust Company, or bearer, in gold coin of the United States, of the present standard of weight and fineness, on the first day of January, A.D. 1933, at the office of said Trust Company in the City of Cleveland, Ohio, with interest thereon at the rate of ..... percent per annum, payable in the gold coin aforesaid semiannually on the first days of July and January in each year, at said office of said Trust Company in said city, or, at the option of the holder, at The First National Bank in the City of New York, upon the presentation and surrender of the coupons hereto attached as they severally become due, as provided therein."

The Ohio Edison Company as successor to The Northern Ohio Traction and Light Company had the right to make payment of the amount called for in the bonds to The Union Trust Company and upon such payment it was relieved from any further liability.

The question is therefore whether or not the plaintiff as guardian has a preferred claim for the amount now due upon these bonds under the circumstances as heretofore related.

It is contended by counsel for the Superintendent of Banks that if there is any trust the same was established at the time of the deposit by The Ohio Edison Company with the bank of this check in December 1932 and that therefore under the law of Ohio there can be no preference. If the sole claim of the plaintiff were based upon this deposit and the accompanying letter in December 1932 the contention of the banking department would be correct and there could be no preference in view of the decisions of the Supreme Court covering similar situations:

MacDonald, Admr. v Fulton, Supt., 125 Oh St 507.

Fulton, Supt. v Gardiner, 127 Oh St 77.

Fulton, Supt. v Paper Company, 129 Oh St 90.

Squire, Supt. v American Express Co., 131 Oh St 239.

The plaintiff in the instant case, however, contends that the trust was established not by this letter which accompanied the check in December, 1932, but was established by the original mortgage executed January 1st, 1903. As his authority for claiming such a preference under the original bonds and mortgage, counsel for plaintiff relies upon the case of Fulton, Superintendent of Banks v University of Dayton, also reported in 129 Oh St 90. So far as the facts appear in the reported decision in the University of Dayton case, the situation is much similar to the instant case and there is justification for counsel relying upon the statement of facts and the conclusion of the court as appearing in that report.

The Supreme Court in that case held that a preference could not be claimed even though the trust existed, by reason of the fact that during the entire period

of the transaction §710-165 GC read as follows:

"No property or securities received or held by any trust company in trust shall be mingled with the investments of the capital stock or other properties belonging to such trust company or be liable for its debts or obligations. Moneys pending distribution or investment may be treated as a deposit in the trust department, or may be deposited in any other department of the bank, subject in other respects to the provisions of law relating to deposit of trust funds by trustees and others."

Counsel argue that on January 1st, 1903 the matter was controlled by the predecessor of the present statute which was Revised Statute §3821-B, a portion of which section was as follows:

"No money, property or securities received or held by such company under the provisions of this act establishing a trust department, shall be mingled with the investments of the capital stock or other moneys or property belonging to said company, or be liable for debts or obligations thereof."

At the time of the execution of this mortgage and of these bonds one statute controlled. At the time of the cancellation of the mortgage and the payment of the bonds another statute controlled. To that extent it is a different situation from the one existing in the University of Dayton case, supra, because as stated by the Supreme Court in that case, §710-165 GC was in force during the whole period of the transaction. In that case the bond issue was of the date of November 1st, 1930, and the sum in controversy was the amount required to pay the bond becoming due November 1st, 1931. Had the deposit been made for the payment of the bonds while §3821-B Revised Statutes was in force, the plaintiff's contention in this respect could not be challenged. However, it is our notion that these bonds and this mortgage having been executed while R. S. §3821-B was in force, that statutory provision must be read into the contract. To hold otherwise would impair the force and sacredness of this contract.

The option was given the obligor to make payment to the Trust Company or to the bearer at the office of the Trust Company. It exercised its option to make payment to the company. The latter was bound to accept the payment, and accepting it, it was bound by the law in force when the contract was made.

The additional claim is made by counsel for the Superintendent of Banks that there is no showing of assets in his hands sufficient to pay all preferred claims. It may be observed that the agreed statement of facts does show an amount in the hands of the Superintendent of Banks far in excess of the amount of these unredeemed bonds. Whether or not there is an amount sufficient to pay all preferred claims is a question with which we need not now be concerned, and if there were preferred claims allowed in excess of the assets in the hands of the liquidating agent he should govern himself with this fact in mind in making his distribution. If this question is important, this cause may be remanded to the Court of Common Pleas for determination of this question as authorized by §1684 GC.

There may be a decree drawn on behalf of the plaintiff in accordance with this opinion. Motion for a new trial if made will be overruled and exceptions may be noted.

ROSS and SHERICK, JJ, concur.